## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **WILCO MARSH BUGGIES &** | § | |
| **DRAGLINES, INC.** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 6:19-CV-565** |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **EIK ENGINEERING SDN. BHD.** | § | |
| **Defendant.** | § | |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff **WILCO MARSH BUGGIES & DRAGLINES, INC.** (hereinafter "Wilco") makes the following allegations against Defendant **EIK ENGINEERING SDN. BHD.** (hereinafter "EIK Engineering" or "Defendant" or "EIK" or "EIK®"), a Malaysian private limited corporation doing business in Texas:

### NATURE OF THE ACTION

This Civil Action is brought pursuant to the U.S. Patent Act, as amended by the Leahy-Smith America Invents Act, 35 U.S.C. § 1, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking recourse for Defendant's willful and intentional infringement and misappropriation of Wilco's intellectual property, specifically its United States Patent No. 6,918,801, entitled "AMPHIBIOUS VEHICLE."  In remedy thereof, Wilco seeks recovery of trebled compensatory damages, reasonable attorney fees, interest, and costs, as well as a preliminary and permanent injunction to prevent further acts of infringement.

### THE PARTIES

1.      Wilco is a corporation organized and existing under the laws of the State of Louisiana, registering its principal place of business at 1304 MacArthur Avenue, Harvey,

Louisiana 70058.  Wilco owns all rights, title, and interest in the intellectual property described herein, and is Plaintiff here.

2.      Defendant is a corporation organized and existing under the laws of Malaysia, with a principal place of business at No. 10 (PTD 5749), Jalan SiLC 1/4, Kawasan Perindustrian SiLC, Nusajaya, Johor, 79200 Malaysia, and is made Defendant here. A copy of the summons and this complaint will be directly served upon Defendant's wholly owned subsidiary company and agent, EIK International Corporation (hereinafter "EIK International"), through Defendant's registered agent for service, Mr. Doug McCullough, 1001 McKinney Street, Suite 1400, Houston, Texas 77002.

## JURISDICTION AND VENUE

3.      This United States District Court may exclusively exercise original jurisdiction over the subject matter of this civil action, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has jurisdiction over the subject matter of this Civil Action based upon an actual controversy between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, for the relief requested herein of declaratory judgment with respect to the validity and enforceability of rights described herein.

5.      This Court has personal jurisdiction over EIK Engineering because EIK Engineering and/or its agents regularly conduct commerce in the State of Texas, including in the Western District of Texas, selling its EIK® products in the State of Texas and deriving revenue and value therefrom, so as to purposefully avail itself of the privilege of conducting business within the State of Texas.

6.      This Court has personal jurisdiction over EIK Engineering because it has established minimum contacts with the State of Texas such that the exercise of personal

jurisdiction would not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

7.     This Court may exercise personal jurisdiction over Defendant on the ground that, *inter alia*, the conduct of EIK Engineering and/or its agents as alleged herein caused and continues to cause injury to Plaintiff Wilco in the State of Texas.

8.     EIK Engineering imports its EIK® products into Texas from Malaysia; stores its EIK® products in Texas; and markets, offers for sale, and sells its EIK® products throughout the State of Texas and in the Western District of Texas.

9.     Defendant has targeted Plaintiff Wilco by purchasing Google AdWords and Google Banner Ads so that anyone searching "Wilco amphibious excavators" will be shown a banner advertisement for EIK® products.

10.     EIK Engineering expected its actions to be of consequence in the State of Texas and the Western District of Texas.

11.     The Western District of Texas is centrally located and equally convenient to the Louisianan Plaintiff and Malaysian Defendant.

12.     The Western District of Texas, Waco Division, is centrally located and equally convenient to Plaintiff's and Defendant's witnesses, primarily the engineers and inventors.

13.     It would not be grossly unfair to force EIK® to defend this patent infringement suit in the Western District of Texas, Waco Division.

14.     EIK® has consented to jurisdiction in Texas by setting up a wholly owned and controlled Texas corporation and agent that is undercapitalized and little more than a storage facility and a consignee of the EIK® infringing products.

15.     A substantial percentage, if not most, of EIK Engineering's business is conducted within the state of Texas.

16.     EIK Engineering is a foreign corporation with its principal place of business in Iskandar Puteri, Malaysia.

17.     EIK Engineering has placed, and is continuing to place, infringing products into the stream of commerce, via the established channel of their wholly owned subsidiary company, EIK International, a Texas corporation, with the knowledge and/or understanding that such products are imported into, stored in, and sold throughout the State of Texas.

18.     EIK International is an active Texas for-profit corporation.   Certificate of Formation filed by EIK International (No. 0802302871), dated Sept. 30, 2015.  [Ex. 1].

19.     EIK International retains employees and a storage facility for its infringing products.

20.     EIK Engineering is the parent company for EIK International.

21.     EIK International is a wholly owned and controlled subsidiary and agent of EIK Engineering.

22.     EIK International acts as an "alter ego" and agent for EIK Engineering.

23.     EIK Engineering and its agent, EIK International, regularly conduct commerce in the forum state, Texas, and purposefully availed themselves of the privilege of conducting business in the State of Texas by maintaining a Texas sales office at 14430 Grant Road, Cypress, Texas 77429 as its principal office in the United States; contracting rentals and sales of EIK Engineering's machines throughout this State through its agent, EIK International; committing the tort of patent infringement in this State; and recruiting Texas residents for employment within this State.

24.     EIK Engineering states on its own webpage that it "contributes to keeping the Houston economy flowing" by importing its excavators into Texas, displaying them its facility in Texas, and selling them to Texas customers. *See EIK Contributes to Keeping the Houston Economy Flowing*, EIK ENG'G (Sept. 21, 2017), http://www.eikengineering.com/2017/09/21/eik-contributes-to-keeping-the-houston-economy-flowing/.  [Ex. 2].

25.     These actions are sufficient to confer personal jurisdiction in this State upon a nonresident of Texas, EIK Engineering, pursuant to the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

26.     Wilco may obtain service of process on EIK Engineering through Texas's long-arm statute in an action for patent infringement.

27.     EIK International is a domestic subsidiary that is acting as its foreign parent's agent, so EIK International may be served with process in a patent infringement suit on behalf of EIK Engineering.

28.     EIK International is EIK Engineering's agent for purposes of service of process, based in part on the following allegations, Paras. 28-79:

29.     EIK International was established by and is the wholly owned and controlled sales agent and subsidiary of EIK Engineering.  *See* Franchise Tax Public Information Report filed by EIK International, dated Aug. 15, 2017.  [Ex. 3].

30.     EIK International exists solely to promote the sale and distribution in Texas of EIK Engineering's products made in Malaysia.

31.     There is no difference between the products offered by EIK Engineering and EIK International. *Compare Products List*, EIK ENG'G, http://www.eikengineering.com/product-lists/ (last visited Sept. 24, 2019) *with Products Category*, EIK INT'L CORP.,

https://eikinternational.com/products-category.html (last visited Sept. 24, 2017).  [Exs. 4 and 5, respectively].

32.    EIK International supplies EIK Engineering products in the Gulf Coast region, including the states of Texas and Louisiana.  *See EIK Helps Customers Turn Mud into Businesses*, EIK ENG'G (Oct. 26, 2017), http://www.eikengineering.com/2017/10/26/eik-helps-customers-turn-mud-into-businesses/.  [Ex. 6].

33.    EIK Engineering and EIK International share common directors.

34.    Mr. Kim Boon Tiew is represented as the Director of EIK Engineering in an Indonesian Supreme Court decision regarding intellectual property rights, as well as a blog post on the EIK Engineering webpage regarding a Chinese New Year celebration at the Johor office in Malaysia.  *See EIK Eng'g Sdn. Bhd. v. PT Eng'g Indonesia Karya and Gov't of the Republic of Indonesia*, 1300 K, Pdt.Sus-HKI, at *1 (2017).

35.    EIK International also lists Mr. Kim Boon Tiew as Director and Chairman.  Ex. 3.

36.    Mr. Chuan Yong Wong is referred to as a Founder and Director for EIK Engineering.    *EIK     Engineering     About*,     FACEBOOK, https://www.facebook.com/Eikengineering/about/?ref=page_internal  (last  visited  Sept.  24, 2019);  *A  Symbol  of  Power,  Wisdom,  and  Good  Fortune*,  EIK  ENG'G, http://www.eikengineering.com/2019/02/18/a-symbol-of-power-wisdom-and-good-fortune/ (last visited Sept. 24, 2019).  [Exs. 7 and 8, respectively].

37.    Mr. Chuan Yong Wong is listed as President and Director for EIK International.  Ex. 3.

38.    EIK Engineering paid the salaries of EIK International's directors.

39.     Because EIK Engineering and EIK International share the same directors, EIK Engineering paid the salaries of the directors of EIK International, Mr. Chuan Yong Wong and Mr. Kim Boon Tiew, whose addresses were listed at the EIK Engineering corporate address in Malaysia. *See* Ex. 1. Mr. Kim Boon Tiew's address is still listed at the EIK Engineering address in the Indonesian Supreme Court decision in 2017. *See EIK Eng'g Sdn. Bhd. v. PT Eng'g Indonesia Karya and Gov't of the Republic of Indonesia*, 1300 K, Pdt.Sus-HKI, at *1 (2017).

40.     EIK Engineering included EIK International in advertisements and promotional offers.

41.     EIK Engineering lists the United States office in Texas throughout its internet presence. *See, e.g.*, Exs. 7 and 8.

42.     EIK International repairs and replaces parts for EIK Engineering's products.

43.     All EIK® products are warranted against manufacturing and workmanship defects by EIK Engineering, which extends to the EIK® products sold through its sales agent EIK International. *See Product Warranty*, EIK ENG'G, http://www.eikengineering.com/product-warranty/#1498729374061-570aa171-5d96 (last visited Sept. 24, 2019). [Ex. 9].

44.     EIK International acts as a mere marketing and sales agent of EIK Engineering to sell EIK® product in Texas.

45.     EIK® products manufactured in Malaysia by EIK Engineering are imported into the United States into Texas through the port of Houston.

46.     EIK International does not manufacture any of the EIK® products.

47.     In the brochure for the amphibious excavator, EIK Engineering includes a section on "Post Sales Service and Support" stating it is a vertically integrated organization. *Amphibious*

*Excavator*, EIK ENG'G, http://www.eikengineering.com/wp-content/uploads/2017/06/Amphibious-.pdf (last visited Sept. 24, 2019).  [Ex. 10].

48.    EIK International is required to apprise EIK Engineering of all aspects of its business, including customer satisfaction, stock levels, and sales.

49.    EIK Engineering's blog on its webpage features testimonials from Gulf Coast customers who purchased EIK® excavators and accessories and parts through EIK International. *See* Ex. 6.

50.    EIK Engineering would have no option but to prosecute patent infringement suits in EIK Engineering's name as the record owner of the EIK® patents.

51.    EIK Engineering is the sole assignee of Mr. Kim Boon Tiew's EIK® patent in the United States.  *See* U.S. Patent No. 8,894,452 (filed Sept. 20, 2011) (issued Nov. 25, 2014).  [Ex. 11].

52.    The EIK® '452 patent was issued prior to EIK International's corporate existence.

53.    EIK Engineering controls EIK International's choice of dealers, designation of products and services, stock levels, and methods of ordering.

54.    EIK Engineering dictates when the rollout of online ordering on EIK International's website will occur.  *See A Single Click Away Soon*, EIK ENG'G (Aug. 23, 2018), http://www.eikengineering.com/2018/08/23/a-single-click-away-soon/.  [Ex. 12].

55.    In the brochure for the amphibious excavator, EIK Engineering includes a section on "Post Sales Service and Support" stating spare parts are always "well-stocked."  Ex. 10.

56.    EIK International is an agent for the marketing and sale of EIK® products in the United States.

57.     EIK Engineering has imported EIK® products into the United States over 600 times since 2014 through bills of lading header information from the U.S. Customs and Border Protection's Automated Manifest Service (AMS).

58.     The AMS shows EIK International was the consignee on over 400 shipments into the United States since 2016.

59.     EIK Engineering dominates and controls EIK International's board of directors.

60.     EIK International's only two directors are two-thirds of the directors of EIK Engineering.  *See* Exs. 1, 3, and 8.

61.     EIK International conducts its board meetings in Malaysia, which is the domicile of EIK Engineering.

62.     Given that the two directors of EIK International, Mr. Kim Boon Tiew and Mr. Chuan Yong Wong, live in Malaysia, EIK International essentially conducts a board meeting for EIK International anytime it convenes for EIK Engineering's board meetings.  *See* Exs. 1 and 8.

63.     The daily operations of EIK Engineering and EIK International are not separate as the managing directors of both entities oversee the entirety of the business from the corporate headquarters in Malaysia.  *See* Ex. 8.

64.     There are little, if any, formal barriers erected between the management of the EIK International and EIK Engineering.

65.     Section 9.001 of the Texas Business Organizations Code requires foreign entities to file an application of registration with the Texas Secretary of State if they are "transacting business" in the State of Texas as a corporation.  TEX. BUS. ORG. CODE ANN. § 9.001(a)(1).

66.     Any separation between EIK Engineering and EIK International is illusory, as the certificate of formation is a mere formality for EIK Engineering to engage in business in the State of Texas.

67.     For example, the contents on the two websites for EIK Engineering and EIK International are almost identical and there is significant overlap in content. *Compare* http://eikengineering.com/ *with* http://eikinternational.com/.  [Exs. 13 and 14, respectively].

68.     Those with whom EIK Engineering comes into contact are not apprised of EIK International's separate identity.

69.     EIK Engineering often refers to EIK® operations in the United States without differentiating EIK International as a separate entity.  *See* Ex. 2.

70.     EIK Engineering is referred to as its headquarters on the EIK International page. Ex. 8.

71.     Products do not bear a different mark than the EIK® trademark registered in the United States by EIK Engineering.

72.     Per the U.S. Patent and Trademark Office's Trademark Electronic Search System (TESS) [Ex. 15], EIK Engineering owns U.S. Trademark Reg No. 4,043,134 [Ex. 16] for "EIK®" for earth moving machines, namely, excavators and bucket excavators; attachments for excavators; double shell grippers for excavators; mechanical and hydraulic lifting machines for transporting bulk materials; pneumatic conveyors; pneumatic machines for conveying bulk materials; cranes; crawler cranes; loading cranes; mobile cranes; and movable cranes.

73.     The EIK® trademark was registered by EIK Engineering on Oct. 18, 2011, which was prior to EIK International 's corporate existence.  *Cf.* Ex. 1.

74.     EIK Engineering must exercise quality control over EIK International's use of EIK® as an authorized trademark user of the EIK® mark in the U.S. to avoid trademark abandonment in the United States.

75.     EIK Engineering has made significant investments in EIK International.

76.     The Indonesian Supreme Court decision references that, translated into English, EIK Engineering "has also made investments and promoted a lot of [its] 'EIK' products in various countries around the world." *See EIK Eng'g Sdn. Bhd. v. PT Eng'g Indonesia Karya and Gov't of the Republic of Indonesia*, 1300 K, Pdt.Sus-HKI, at *6–7 (2017).

77.     Mr. Doug McCullough, the registered agent for EIK International, is located at 1001 McKinney Street, Suite 1400, Houston, Texas 77002.

78.     Service of process may properly be made by serving EIK International through its registered agent, Mr. Doug McCullough, at 1001 McKinney Street, Suite 1400, Houston, Texas 77002.

79.     A foreign corporation's designation of an agent for service of process in a state constitutes a consent to be sued in courts within the state which apply the law of the state, whether state or federal.

80.     This constitutes consent to suits brought in conformity to federal regulations governing the jurisdiction, venue, and procedure of federal district courts.

81.     Venue is proper under 28 U.S.C. § 1391(c)(3) on the ground that EIK Engineering is subject to personal jurisdiction in this State and in this District.

## **CAUSE OF ACTION**

### **Wilco's Patent Rights**

82.     Wilco is the sole assignee of the embodiments that provide a tracked, self-propelled platform from which amphibious excavating equipment can operate on dryland, on soft terrain, or while floating in a body of water, as originally disclosed by assignee Wilco in the United States Patent and Trademark Office (hereinafter "USPTO" or "Patent Office") on June 3, 2003 under Non-Provisional Utility Patent Application Serial No. 10/453,795 (hereinafter "'795 Application") [Ex. 17].  True and correct copies of the materials, as filed on June 3, 2003, are attached and incorporated by reference.

83.     After a full and fair examination of the '795 Application, the Patent Office issued its Notice of Allowance, dated February 15, 2005, on all pending claims of the '795 Application. A true and correct copy of said Notice of Allowance is attached and incorporated by reference. [Ex. 18].  The Notice of Allowance specifically confirmed that the '795 Application was duly examined and allowed for issuance as a United States Patent pursuant to federal law and regulations.

84.      U.S. Patent No. 6,918,801, entitled "AMPHIBIOUS VEHICLE" (hereinafter "'801 Patent"), arising from the '795 Application, duly and legally issued on July 19, 2005 to inventors John Wilson and Robert Wilson.  A true and correct copy of the '801 Patent is attached and incorporated by reference.  [Ex. 19].

85.     The '801 patent was subsequently assigned to Wilco, and assignment was recorded in the U.S. Patent Office under Reel/Frame No. 045113/093. A true and correct copy of the recordation-of-assignment document is attached.  [Ex. 20].

86.     All rights arising from the '801 Patent are in full force and effect under federal law.

87.     All rights of priority that arise from the '801 Patent relate back to June 3, 2003, the date of filing of the '795 Application.

88.     Wilco solely owns all rights, title, and interest in and arising from the '801 Patent.

**<u>Defendant's Willful Infringement</u>**

89.     Defendant is an international manufacturer and supplier of heavy equipment, machinery, and specialized attachments thereto, including excavator attachments for various makes and models, such as the swamp (i.e., amphibious) excavators and corresponding attachments described herein, for the construction and dredging industries throughout the world.

90.     Defendant does not manufacture excavator power units and upper cab and control units that are mounted above the lower track undercarriage sub-assemblies.

91.     Defendant purchases all of its excavator power units from manufacturers, such as U.S. based company, Caterpillar (also referred to as "CAT®"), and modifies the lower track undercarriage sub-assemblies to add pontoons so the CAT® excavator will float and vertically extend spuds so the excavator will remain stationary and not float away during use in excavation.

92.     Defendant's excavator power unit from manufacturers such as Caterpillar retains the yellow CAT® colors and CAT® trademark, so the excavator still appears to the public to be a CAT® excavator.

93.     Defendant claims it is the largest amphibious (i.e., swamp) excavator and corresponding attachment manufacturer in its region (i.e., Southeast Asia) which, in terms of demand, is asserted by EIK Engineering to be the largest regional segment of the amphibious excavator market.

94.     Defendant exports EIK® products from Malaysia and, through its subsidiary, EIK International, imports these products, including the amphibious excavators and corresponding attachments, into the United States which, in terms of demand, is asserted by EIK Engineering to be the second largest regional segment of the amphibious excavator market.

95.     Defendant thereafter, through its wholly owned and controlled subsidiary, EIK International, markets, sells, distributes, and services EIK® products, including the amphibious excavators and corresponding attachments, throughout the United States, especially in the State of Texas, in relation to construction and dredging projects.

96.     Amphibious excavators and/or excavators equipped with special attachments allowing for efficient and safe amphibious excavation may also serve other purposes in the State of Texas, such as laying and building oil pipelines.

97.     The Southern States, including Texas and Louisiana, are accordingly a primary market for Defendant, who continuously and systematically manufactures, markets, sells, distributes, and services its imported products, especially the amphibious excavators and corresponding attachments described below out of its Texas yard and facility.

98.     Defendant manufactures and exports and thereafter, through its subsidiary, EIK International, imports, assembles, markets, sells, distributes, and services the "Amphibious Excavator" series of undercarriages, totaling at least eight (8) different models, for use in connection with excavators.  Defendant's "Amphibious Excavator" series of undercarriages includes models AM60, AM80, AM140, AM200, AM250, AM300, AM350, and AM400, each of which perform the same functions but at varying specifications.  A true and correct copy of a specification table, as published by Defendant, outlining each of these models is attached and incorporated by reference.  [Ex. 21].

99.     Defendant manufactures and exports and thereafter, through its subsidiary, EIK International, imports, assembles, markets, sells, distributes, and services supplementary pontoons and spuds that are specially manufactured and adapted to be attached by the user to each of the

above-listed undercarriages, which are each specifically compatible for said attachments, of the "Amphibious Excavator" series.

100. Defendant manufactures and exports and thereafter, through its subsidiary and agent, EIK International, imports, assembles, markets, sells, distributes, and services its "Amphibious Excavator" series of undercarriages, already pre-assembled with supplementary pontoons and spuds by Defendant and/or Defendant's agents, for use in connection with excavators.

101. Defendant, through its subsidiary and agent, EIK International, assembles, markets, sells, distributes, and services excavators that are equipped with the "Amphibious Excavator" series of undercarriages attached with supplementary pontoons and spuds.

102. Excavators comprising an "Amphibious Excavator" series of undercarriage with the attached pontoons and spuds, whether pre-assembled by Defendant and/or Defendant's agents or later attached by the user as intended, designed, made, and adapted, allows for excavation activities in soft terrain, including swampy and muddy areas, and is also able to float on water due to the attached pontoons and spuds.

103. Excavators comprising of an "Amphibious Excavator" series of undercarriage with the attached pontoons and spuds, whether pre-assembled by Defendant and/or Defendant's agents or later attached by the user as designed and intended, are hereinafter referred to as the "Infringing Products" of Defendant.

104. Defendant's Infringing Products are assembled, marketed, sold, distributed, and serviced for and to the end user or an individual or entity that will market and sell and/or rent the Infringing Products, and/or services related thereto.

105.    The components (i.e., the undercarriage and pontoons and spuds) of Defendant's Infringing Products are manufactured, exported, imported, assembled, marketed, sold, distributed, and serviced for later assembling, as specially made and adapted, Defendant's Infringing Products.

106.    A true and correct copy of a brochure entitled "Amphibious Excavator brochure," as published by Defendant, is attached and incorporated by reference.  Ex. 10.  This brochure outlines the specifications and uses of the "Amphibious Excavator" series of undercarriages, the supplemental pontoons and spuds, and the combination thereof on an excavator, as well as Defendant's services and support.

107.    According to the brochure, "[a]n amphibious excavator/marsh buggy is specifically designed to [maneuver] in marshy, swampy area and soft terrain, and it can also float on water as an added safety feature.  It is completely self-propelled and can virtually access all terrains, and yet requires minimum supporting transportation and hoisting equipment."  Ex. 10, pg. 1.

108.    A true and correct copy of an assembly manual for the "Amphibious Excavator" series of undercarriages, particularly in relation to the assembling of the AM200 and AM250 undercarriages, as well as the supplemental pontoon and spuds, to an excavator, is attached and incorporated by reference.  Ex. 22.  This assembly manual describes and illustrates to a user how to assemble the Infringing Products.

109.    Pages 24 through 26 of the assembly manual describe and illustrate the installation of the pontoons to the undercarriage of the excavator.  As noted, "[b]y adding these additional pontoons to EIK® amphibious excavator, it will provide extra floating capacity and increase the machine stability during travelling an open water but the digging jobs are still limited at water level not more than 1.5m depth."  Ex. 22, pg. 24.

110.    Pages 27 through 38 of the assembly manual describe and illustrate the installation of the spuds to the undercarriage of the excavator.  As noted, "[b]y adding these spud piles, the digging jobs could be done at water level up to 4.5m depth[.]"  Ex. 22, pg. 27.

111.    A true and correct copy of an operation manual for an excavator equipped with an "Amphibious Excavator" series of undercarriages, as well as the supplemental pontoon and spuds, is attached and incorporated by reference. [Ex. 23].  This operation manual describes and illustrates to a user how to operate the Infringing Products.

112.    Page 11 of the operation manual describes and illustrates the operation of the pontoons and spuds, as attached to the undercarriage of the excavator.  Here, FIG. 1.18 illustrates an excavator equipped with supplementary pontoon and spuds, dredging at a particular water depth.  *See* Ex. 23, pg. 11.

113.    Page 12 of the operation manual outlines the recommended water depth for dredging, dependent on the model of undercarriage of the "Amphibious Excavator" series.  *See* Ex. 23, pg. 12.

114.    Defendant's Infringing Products are marketed, sold, assembled, and used in the State of Texas.

115.    As described and illustrated in the brochure, the assembly manual, and the operation manual, Defendant's Infringing Products require the supplemental pontoons and spuds for efficient and safe dredging in coastal restoration projects, among other projects.  *See* Exs. 10, 22, and 23.

116.    Defendant's Infringing Products, and the use thereof, embody the patented inventions and process, as applied-for in the '795 Application and duly issued as the '801 Patent.

117.    The preamble of Claim 1 of the '801 Patent claims a vehicle.

118.    Defendant's Infringing Products embody vehicles.  *See* Exs. 10, 22, and 23.

119.    Defendant's Infringing Products practice the preamble of Claim 1 of the '801 Patent.

120.    Element (i) of Claim 1 of the '801 Patent claims said vehicle comprises of a chassis.

121.    Defendant's Infringing Products embody vehicles that comprise of a chassis.  *See* Exs. 10, 22, and 23.

122.    Defendant's Infringing Products practice element (i) of Claim 1 of the '801 Patent.

123.    Element (ii) of Claim 1 of the '801 Patent claims said vehicle comprises of at least two pontoons supported by said chassis, wherein said pontoons provide sufficient buoyancy such that the vehicle can float on water.

124.    Defendant's Infringing Products embody vehicles that comprise of at least two pontoons supported by said chassis, wherein said pontoons provide sufficient buoyancy such that the vehicle can float on water.  *See* Exs. 10, 22, and 23.

125.    Defendant's Infringing Products practice element (ii) of Claim 1 of the '801 Patent.

126.    Element (iii) of Claim 1 of the '801 Patent claims said vehicle comprises of a track system disposed on said pontoons and adapted to provide propulsion to the vehicle when moving on land or in water.

127.    Defendant's Infringing Products embody vehicles that comprise of a track system disposed on said pontoons and adapted to provide propulsion to the vehicle when moving on land or in water.  *See* Exs. 10, 22, and 23.

128.    Defendant's Infringing Products practice element (iii) of Claim 1 of the '801 Patent.

129.    Element (iv) of Claim 1 of the '801 Patent claims said vehicle comprises of a plurality of spuds connected to said chassis, wherein said spuds have a first position wherein said

spuds extend below the bottom of said pontoons and a second position wherein said spuds do not extend below the bottom of said pontoons.

130.    Defendant's Infringing Products embody vehicles that comprise of a track system disposed on said pontoons and adapted to provide propulsion to the vehicle when moving on land or in water.  *See* Exs. 10, 22, and 23.

131.    Defendant's Infringing Products practice element (iv) of Claim 1 of the '801 Patent.

132.    Defendant's Infringing Products practice Claim 1 of the '801 Patent.

133.    Defendant infringes Claim 1 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

134.    Claim 2 of the '801 Patent claims the vehicle of claim 1, and further claims said vehicle further comprises of a piece of earth excavating equipment supported by said chassis.

135.    Defendant's Infringing Products embody said vehicles that further comprise of a piece of earth excavating equipment supported by said chassis.  *See* Exs. 10, 22, and 23.

136.    Defendant's Infringing Products practice Claim 2 of the '801 Patent.

137.    Defendant infringes Claim 2 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

138.    Claim 3 of the '801 Patent claims the vehicle of claim 2, and further claims, wherein the piece of earth excavating equipment is a hydraulic excavator.

139.    Defendant's Infringing Products embody said vehicles, wherein the piece of earth excavating equipment is a hydraulic excavator.  *See* Exs. 10, 22, and 23.

140.    Defendant's Infringing Products practice Claim 3 of the '801 Patent.

141.    Defendant infringes Claim 3 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

142.    Claim 4 of the '801 Patent claims the vehicle of claim 1, and further claims, wherein said track system further comprises two endless chains and a plurality of cleats attached to the endless chains.

143.    Defendant's Infringing Products embody said vehicles, wherein said track system further comprises two endless chains and a plurality of cleats attached to the endless chains.  *See* Exs. 10, 22, and 23.

144.    Defendant's Infringing Products practice Claim 4 of the '801 Patent.

145.    Defendant infringes Claim 4 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

146.    Claim 5 of the '801 Patent claims the vehicle of claim 1, and further claims said vehicle further comprises of a plurality of spud assemblies adapted to deploy and recover said spuds from the first position.

147.    Defendant's Infringing Products embody said vehicles that further comprise of a plurality of spud assemblies adapted to deploy and recover said spuds from the first position.  *See* Exs. 10, 22, and 23.

148.    Defendant's Infringing Products practice Claim 5 of the '801 Patent.

149.    Defendant infringes Claim 5 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

150.    The preamble of Claim 6 of the '801 Patent claims the vehicle of claim 5.

151.    Defendant's Infringing Products embody said vehicles.  *See* Exs. 10, 22, and 23.

152.    Defendant's Infringing Products practice the preamble of Claim 6 of the '801 Patent.

153.    Element (i) of Claim 6 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a winch secured to said chassis.

154.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a winch secured to said chassis.  *See* Exs. 10, 22, and 23.

155.    Defendant's Infringing Products practice element (i) of Claim 6 of the '801 Patent.

156.    Element (ii) of Claim 6 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a winch cable secured to one of said spuds and spooled onto said winch.

157.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a winch cable secured to one of said spuds and spooled onto said winch. *See* Exs. 10, 22, and 23.

158.    Defendant's Infringing Products practice element (ii) of Claim 6 of the '801 Patent.

159.    Element (iii) of Claim 6 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a spud retainer attached to said chassis and slidably engaging one of said spuds.

160.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a spud retainer attached to said chassis and slidably engaging one of said spuds.  *See* Exs. 10, 22, and 23.

161.    Defendant's Infringing Products practice element (iii) of Claim 6 of the '801 Patent.

162.    Defendant's Infringing Products practice Claim 6 of the '801 Patent.

163.    Defendant infringes Claim 6 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

164.    Claim 7 of the '801 Patent claims the vehicle of claim 6, and further claims, wherein said winch has a released position where said winch cable is spooled out by said spud moving

- 21 -

downward under the influence of gravity and a recovery position where said winch cable is spooled onto said winch as said spud moves upward.

165.     Defendant's Infringing Products embody said vehicles, wherein said winch has a released position where said winch cable is spooled out by said spud moving downward under the influence of gravity and a recovery position where said winch cable is spooled onto said winch as said spud moves upward.  *See* Exs. 10, 22, and 23.

166.     Defendant's Infringing Products practice Claim 7 of the '801 Patent.

167.     Defendant infringes Claim 7 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

168.     The preamble of Claim 8 of the '801 Patent claims the vehicle of claim 5.

169.     Defendant's Infringing Products embody said vehicles.  *See* Exs. 10, 22, and 23.

170.     Defendant's Infringing Products practice the preamble of Claim 8 of the '801 Patent.

171.     Element (i) of Claim 8 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a spud retainer attached to said chassis and slidably engaging one of said spuds.

172.     Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a spud retainer attached to said chassis and slidably engaging one of said spuds. *See* Exs. 10, 22, and 23.

173.     Defendant's Infringing Products practice element (i) of Claim 8 of the '801 Patent.

174.     Element (ii) of Claim 8 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a hydraulic cylinder attached at a first end to said spud retainer or said chassis.

175.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a hydraulic cylinder attached at a first end to said spud retainer or said chassis. *See* Exs. 10, 22, and 23.

176.    Defendant's Infringing Products practice element (ii) of Claim 8 of the '801 Patent.

177.    Element (iii) of Claim 8 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a link attached to a second end of said hydraulic cylinder.

178.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a link attached to a second end of said hydraulic cylinder. *See* Exs. 10, 22, and 23.

179.    Defendant's Infringing Products practice element (iii) of Claim 8 of the '801 Patent.

180.    Element (iv) of Claim 8 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise a pin releasably connecting said link to said spud.

181.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a pin releasably connecting said link to said spud. *See* Exs. 10, 22, and 23.

182.    Defendant's Infringing Products practice element (iv) of Claim 8 of the '801 Patent.

183.    Defendant's Infringing Products practice Claim 8 of the '801 Patent.

184.    Defendant infringes Claim 8 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

185.    The preamble of Claim 9 of the '801 Patent claims a method.

186.    Defendant's Infringing Products, and the use thereof, embody a method. *See* Exs. 10, 22, and 23.

187.    Defendant's Infringing Products, and the use thereof, practice the preamble of Claim 9 of the '801 Patent.

188.    Element (i) of Claim 9 of the '801 Patent claims said method comprises of providing earth excavating equipment disposed on a vehicle adapted to move over land or through the water.

189.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of providing earth excavating equipment disposed on a vehicle adapted to move over land or through the water.  *See* Exs. 10, 22, and 23.

190.    Defendant's Infringing Products, and the use thereof, practice element (i) of Claim 9 of the '801 Patent.

191.    Element (ii) of Claim 9 of the '801 Patent claims said method comprises of floating the vehicle carrying the earth excavating equipment in a body of water.

192.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of floating the vehicle carrying the earth excavating equipment in a body of water.  *See* Exs. 10, 22, and 23.

193.    Defendant's Infringing Products, and the use thereof, practice element (ii) of Claim 9 of the '801 Patent.

194.    Element (iii) of Claim 9 of the '801 Patent claims said method comprises of deploying a plurality of spuds from the vehicle into the bottom of the body of water.

195.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of deploying a plurality of spuds from the vehicle into the bottom of the body of water. *See* Exs. 10, 22, and 23.

196.    Defendant's Infringing Products, and the use thereof, practice element (iii) of Claim 9 of the '801 Patent.

197.    Element (iv) of Claim 9 of the '801 Patent claims said method comprises of performing earth excavating operations.

198.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of performing earth excavating operations.  *See* Exs. 10, 22, and 23.

199.    Defendant's Infringing Products, and the use thereof, practice element (iv) of Claim 9 of the '801 Patent.

200.    Element (v) of Claim 9 of the '801 Patent claims said method comprises of retracting the plurality of spuds such that the entirety of the spuds are above the bottom of the vehicle.

201.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of retracting the plurality of spuds such that the entirety of the spuds are above the bottom of the vehicle.  *See* Exs. 10, 22, and 23.

202.    Defendant's Infringing Products, and the use thereof, practice element (v) of Claim 9 of the '801 Patent.

203.    Element (vi) of Claim 9 of the '801 Patent claims said method comprises of moving the vehicle to a position where the vehicle is not floating but is resting at the bottom of a body of water.

204.    Defendant's Infringing Products, and the use thereof, embody a method that comprises of moving the vehicle to a position where the vehicle is not floating but is resting at the bottom of a body of water.  *See* Exs. 10, 22, and 23.

205.    Defendant's Infringing Products, and the use thereof, practice element (vi) of Claim 9 of the '801 Patent.

206.   Element (vii) of Claim 9 of the '801 Patent claims said method comprises of performing earth excavating operations.

207.   Defendant's Infringing Products, and the use thereof, embody a method that comprises of performing earth excavating operations.  *See* Exs. 10, 22, and 23.

208.   Defendant's Infringing Products, and the use thereof, practice element (vii) of Claim 9 of the '801 Patent.

209.   Defendant's Infringing Products, and the use thereof, practice Claim 9 of the '801 Patent.

210.   Defendant infringes Claim 9 of the '801 Patent as its Infringing Products, and the combination of its components, and the use thereof, embody the patented process described therein.

211.   Claim 10 of the '801 Patent claims the method of claim 9, and further claims said method further comprises of moving the vehicle to a position not in a body of water where the vehicle is resting on land.

212.   Defendant's Infringing Products, and the use thereof, embody said method that further comprises of moving the vehicle to a position not in a body of water where the vehicle is resting on land.  *See* Exs. 10, 22, and 23.

213.   Defendant's Infringing Products, and the use thereof, practice Claim 10 of the '801 Patent.

214.   Defendant infringes Claim 10 of the '801 Patent as its Infringing Products, and the combination of its components, and the use thereof, embody the patented process described therein.

215.    Claim 11 of the '801 Patent claims the method of claim 9, and further claims, wherein the vehicle moves over land or through water under its own power.

216.    Defendant's Infringing Products, and the use thereof, embody said method, wherein the vehicle moves over land or through water under its own power.  *See* Exs. 10, 22, and 23.

217.    Defendant's Infringing Products, and the use thereof, practice Claim 11 of the '801 Patent.

218.    Defendant infringes Claim 11 of the '801 Patent as its Infringing Products, and the combination of its components, and the use thereof, embody the patented process described therein.

219.    The preamble of Claim 12 of the '801 Patent claims a vehicle.

220.    Defendant's Infringing Products embody vehicles.  *See* Exs. 10, 22, and 23.

221.    Defendant's Infringing Products practice the preamble of Claim 12 of the '801 Patent.

222.    Element (i) of Claim 12 of the '801 Patent claims said vehicle comprises of an amphibious chassis including pontoons fitted with powered track systems adapted to provide propulsion to the vehicle both on land and in water.

223.    Defendant's Infringing Products embody vehicles that comprise of an amphibious chassis including pontoons fitted with powered track systems adapted to provide propulsion to the vehicle both on land and in water.  *See* Exs. 10, 22, and 23.

224.    Defendant's Infringing Products practice element (i) of Claim 12 of the '801 Patent.

225.    Element (ii) of Claim 12 of the '801 Patent claims said vehicle comprises of a plurality of spud assemblies attached to said amphibious chassis.

226.    Defendant's Infringing Products embody vehicles that comprise of a plurality of spud assemblies attached to said amphibious chassis.  *See* Exs. 10, 22, and 23.

227.    Defendant's Infringing Products practice element (ii) of Claim 12 of the '801 Patent.

228.    Element (iii) of Claim 12 of the '801 Patent claims said vehicle comprises of equipment mounted to said amphibious chassis, wherein said equipment has a first operating mode wherein the vehicle is resting on the ground and a second operating mode wherein the vehicle is floating in water, wherein said plurality of spud assemblies retract entirely above the bottom of the pontoons in the first operating mode and are adapted to laterally support the vehicle in the second operating mode.

229.    Defendant's Infringing Products embody vehicles that comprise of equipment mounted to said amphibious chassis, wherein said equipment has a first operating mode wherein the vehicle is resting on the ground and a second operating mode wherein the vehicle is floating in water, wherein said plurality of spud assemblies retract entirely above the bottom of the pontoons in the first operating mode and are adapted to laterally support the vehicle in the second operating mode.  *See* Exs. 10, 22, and 23.

230.    Defendant's Infringing Products practice element (iii) of Claim 12 of the '801 Patent.

231.    Defendant's Infringing Products practice Claim 12 of the '801 Patent.

232.    Defendant infringes Claim 12 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

233.    Claim 13 of the '801 Patent claims the vehicle of claim 12, and further claims, wherein the powered track systems provide propulsion both on land and in water.

234.    Defendant's Infringing Products embody said vehicles, wherein the powered track systems provide propulsion both on land and in water.  *See* Exs. 10, 22, and 23.

235.    Defendant's Infringing Products practice Claim 13 of the '801 Patent.

236.    Defendant infringes Claim 13 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

237.    Claim 14 of the '801 Patent claims the vehicle of claim 12, and further claims, wherein said equipment is earth excavating equipment.

238.    Defendant's Infringing Products embody said vehicles, wherein said equipment is earth excavating equipment.  *See* Exs. 10, 22, and 23.

239.    Defendant's Infringing Products practice Claim 14 of the '801 Patent.

240.    Defendant infringes Claim 14 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

241.    Claim 15 of the '801 Patent claims the vehicle of claim 12, and further claims, wherein said equipment is a hydraulic excavator.

242.    Defendant's Infringing Products embody said vehicles, wherein said equipment is a hydraulic excavator.  *See* Exs. 10, 22, and 23.

243.    Defendant's Infringing Products practice Claim 15 of the '801 Patent.

244.    Defendant infringes Claim 15 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

245.    The preamble of Claim 16 of the '801 Patent claims the vehicle of claim 12.

246.    Defendant's Infringing Products embody said vehicles.  *See* Exs. 10, 22, and 23.

247.    Defendant's Infringing Products practice the preamble of Claim 16 of the '801 Patent.

248.    Element (i) of Claim 16 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of an elongated spud slidably engaged with a spud retainer attached to said chassis; a winch secured to said chassis.

249.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of an elongated spud slidably engaged with a spud retainer attached to said chassis; a winch secured to said chassis.  *See* Exs. 10, 22, and 23.

250.    Defendant's Infringing Products practice element (i) of Claim 16 of the '801 Patent.

251.    Element (ii) of Claim 16 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a winch cable secured to said spud and spooled onto said winch.

252.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a winch cable secured to said spud and spooled onto said winch.  *See* Exs. 10, 22, and 23.

253.    Defendant's Infringing Products practice element (ii) of Claim 16 of the '801 Patent.

254.    Defendant's Infringing Products practice Claim 16 of the '801 Patent.

255.    Defendant infringes Claim 16 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

256.    Claim 17 of the '801 Patent claims the vehicle of claim 16, and further claims, wherein said winch has a released position where said winch cable is spooled out as said spud moves downward under the influence of gravity and a recovery position where said winch cable is spooled onto said winch as said spud moves upward.

257.    Defendant's Infringing Products embody said vehicles, wherein said winch has a released position where said winch cable is spooled out as said spud moves downward under the

influence of gravity and a recovery position where said winch cable is spooled onto said winch as said spud moves upward.  *See* Exs. 10, 22, and 23.

258.    Defendant's Infringing Products practice Claim 17 of the '801 Patent.

259.    Defendant infringes Claim 17 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

260.    The preamble of Claim 18 of the '801 Patent claims the vehicle of claim 12.

261.    Defendant's Infringing Products embody said vehicles.  *See* Exs. 10, 22, and 23.

262.    Defendant's Infringing Products practice the preamble of Claim 18 of the '801 Patent.

263.    Element (i) of Claim 18 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a spud slidably engaged with a spud retainer attached to said chassis.

264.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a spud slidably engaged with a spud retainer attached to said chassis.  *See* Exs. 10, 22, and 23.

265.    Defendant's Infringing Products practice element (i) of Claim 18 of the '801 Patent.

266.    Element (ii) of Claim 18 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a hydraulic cylinder attached at a first end to said spud retainer or said chassis.

267.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a hydraulic cylinder attached at a first end to said spud retainer or said chassis.  *See* Exs. 10, 22, and 23.

268.    Defendant's Infringing Products practice element (ii) of Claim 18 of the '801 Patent.

269.    Element (iii) of Claim 18 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a link attached to a second end of said hydraulic cylinder.

270.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a link attached to a second end of said hydraulic cylinder. *See* Exs. 10, 22, and 23.

271.    Defendant's Infringing Products practice element (iii) of Claim 18 of the '801 Patent.

272.    Element (iv) of Claim 18 of the '801 Patent claims said vehicle, wherein said spud assemblies comprise of a pin releasably connecting said link to said spud.

273.    Defendant's Infringing Products embody said vehicles, wherein said spud assemblies comprise of a pin releasably connecting said link to said spud. *See* Exs. 10, 22, and 23.

274.    Defendant's Infringing Products practice element (iv) of Claim 18 of the '801 Patent.

275.    Defendant's Infringing Products practice Claim 18 of the '801 Patent.

276.    Defendant infringes Claim 18 of the '801 Patent as its Infringing Products, and the combination of its components, embody the patented invention described therein.

277.    Defendant's conduct in relation to its Infringing Products, as described herein, is without any grant of license by Wilco.

278.    Defendant's conduct in relation to its Infringing Products, as described herein, is without any authorization of Wilco.

279.    Defendant's conduct in relation to its Infringing Products, as described herein, constitutes as direct infringement of the '801 Patent.

280.    Defendant's conduct in relation to its Infringing Products, as described herein, constitutes as induced infringement of the '801 Patent.

281.    Defendant's conduct in relation to its Infringing Products, as described herein, constitutes as contributory infringement of the '801 Patent.

282.    Defendant's conduct in relation to its Infringing Products directly and proximately results in the deprivation of Wilco's exclusive rights granted under the '801 Patent.

283.    Defendant's conduct in relation to its Infringing Products directly and proximately results in substantial damage to Wilco, which is unable to capitalize on its '801 Patent via manufacturing, distribution, sale, and rental of products and services embodying the patented inventions and processes described therein, as the patented invention and process was misappropriated by Defendant in same.

284.    Defendant's conduct in relation to its Infringing Products, as described herein, occurred with actual knowledge of the material found in the '795 Application and its duly issued '801 Patent, and Wilco's rights therefrom, and the consequences of such conduct.

285.    Defendant's conduct in relation to its Infringing Products, as described herein, occurred with constructive knowledge of the material found in the '795 Application and its duly issued '801 Patent, and Wilco's rights therefrom, and the consequences of such conduct.

286.    Defendant maintains its current course of action despite said knowledge.

287.    Defendant failed to mitigate its undue impact on Wilco.

288.    Defendant's course of conduct, and its refusal to acknowledge the rights of Wilco under the '801 Patent, will persist if unchecked, resulting in further harm to Wilco.

289.    This controversy is amenable to specific relief through a decree from this Court.

**FEDERAL CLAIMS**
**Count I, Willful Patent Infringement**

**35 U.S.C. § 271(a)**

290.    Wilco hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 289 hereof as if fully set forth herein.

291.    Defendant's conduct constitutes as an actionable patent infringement under 35 U.S.C. § 271.

292.    Defendant infringed and continues to directly infringe, either literally or under the Doctrine of Equivalents, one or more claims of the '801 Patent by manufacturing, importing, making, using, selling, and offering to sell products that embody the patented invention described in the '801 Patent.

293.    Defendant directly and proximately caused actual and irreparable damage for which no adequate remedy exists at law, and will continue to cause such damage to Wilco, which is deprived of exercising its rights under the '801 Patent.

294.    Wilco is accordingly entitled to relief.

295.    Wilco demands to enjoin and restrain Defendant in accordance with the principles of equity, and upon such terms as the Court deems reasonable to prevent further deprivation of the rights secured under its '801 Patent, pursuant to 35 U.S.C. § 283.

296.    Wilco is additionally entitled to recover (a) compensatory damages, (b) pre-judgment and post-judgment interest, and (c) costs associated with bringing this action, in accordance with 35 U.S.C. § 284.

**Count II, Inducing Patent Infringement**
**35 U.S.C. § 271(b)**

297.    Wilco hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 296 hereof as if fully set forth herein.

298.    Defendant's conduct constitutes as an actionable patent infringement under 35 U.S.C. § 271.   Defendant infringed and continues to indirectly infringe, through induced infringement, one or more claims of the '801 Patent by inducing buyers to make, use, sell, and offer for sell products and services that embody the patented invention described in the '801 Patent.

299.    Defendant directly and proximately caused actual and irreparable damage for which no adequate remedy exists at law, and will continue to cause such damage to Wilco, which is deprived of exercising its rights under the '801 Patent.

300.    Wilco is accordingly entitled to relief.

301.    Wilco demands to enjoin and restrain Defendant in accordance with the principles of equity, and upon such terms as the Court deems reasonable to prevent further deprivation of the rights secured under its '801 Patent, pursuant to 35 U.S.C. § 283.

302.    Wilco is additionally entitled to recover (a) compensatory damages, (b) pre-judgment and post-judgment interest, and (c) costs associated with bringing this action, in accordance with 35 U.S.C. § 284.

### Count III, Contributory Patent Infringement
### 35  U.S.C. § 271(c)

303.    Wilco hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 302 hereof as if fully set forth herein.

304.    Defendant's conduct constitutes as an actionable patent infringement under 35 U.S.C. § 271.

305.    Defendant infringed and continues to indirectly infringe, through contributory infringement, one or more claims of the '801 Patent by manufacturing, importing, selling, and offering to sell components of and for use in practicing the patented invention described in the '801 Patent, knowing the same to be especially made and especially adapted for a use constituting

an infringement, as the components constitute a material part of said invention and have no substantial non-infringing use.

306.    Defendant directly and proximately caused actual and irreparable damage for which no adequate remedy exists at law, and will continue to cause such damage to Wilco, which is deprived of exercising its rights under the '801 Patent.  Wilco is accordingly entitled to relief.

307.    Wilco demands to enjoin and restrain Defendant in accordance with the principles of equity, and upon such terms as the Court deems reasonable to prevent further deprivation of the rights secured under its '801 Patent, pursuant to 35 U.S.C. § 283.

308.    Wilco is additionally entitled to recover (a) compensatory damages, (b) pre-judgment and post-judgment interest, and (c) costs associated with bringing this action, in accordance with 35 U.S.C. § 284.

## Count IV, Exceptional Case
## 35  U.S.C. §§ 271, 285

309.    Wilco hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 308 hereof as if fully set forth herein.

310.    Defendant's patent infringement under 35 U.S.C. § 271 is an exceptional case, justifying additional recovery.

311.    Defendant's past and continuing infringement of the '801 Patent was and is intentional, deliberate, willful, and without regard to Wilco's rights, as shown by Defendant's actual and constructive knowledge of the patented invention of the '801 Patent.

312.    Defendant's infringing conduct warrants Wilco's recovery of treble compensatory damages under 35 U.S.C. § 284 and reasonable attorney fees pursuant to 35 U.S.C. § 285.

313.    Plaintiff Wilco demands a trial by Jury.

## NOTICE OF LITIGATION HOLD REQUIREMENT

314.    Defendant is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

315.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices

of all of Defendant's agents or employees if Defendant's electronically stored information resides there.

316.     Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Wilco respectfully requests that this Court enter judgment in its favor and against Defendant on all claims for relief asserted herein, as follows:

A.     Declaring that Defendant has not met its burden to prove that Wilco's '801 Patent is invalid and unenforceable by clear and convincing evidence;

B.     Declaring that Defendant infringed, contributorily infringed, and/or induced infringement of one or more claims of Wilco's '801 Patent by a preponderance of the evidence;

C.     Preliminarily and permanently restraining and enjoining Defendant and its officers, directors, employees, servants, agents, affiliates, attorneys, and all others acting in privity or in concert with it, and its parents, subsidiaries, divisions, successors, and assigns, from all acts in violation of any right of Wilco, as secured by the '801 Patent, under the principles of equity, on such terms as the court deems reasonable, in accordance with 35 U.S.C. § 283;

D.      Ordering the payment of compensatory damages, and in no event less than a reasonable royalty, in relation to the claim asserted herein under 35 U.S.C. § 271, based on remaining acts of patent infringement, in accordance with 35 U.S.C. § 284;

E.      Ordering the payment of up to trebled compensatory damages in relation to the claim asserted herein under 35 U.S.C. § 271, based on acts of patent infringement found to be willful and deliberate, in accordance with 35 U.S.C. § 284;

F.      Ordering the payment of costs in accordance with 35 U.S.C. § 284;

G.      Ordering the payment of reasonable attorney fees in accordance with 35 U.S.C. § 285;

H.      Ordering the payment of pre-judgment interest in accordance with 35 U.S.C. § 284, at the maximum rate permitted by law, on all damages awarded;

I.      Ordering the payment of post-judgment interest in accordance with 28 U.S.C. § 1961, at the maximum rate permitted by law, on all damages awarded; and

J.      Granting Wilco such other and further relief as this Court deems just and proper.

Dated: October 3, 2019.

Respectfully submitted,

/s/ *Charles W. Hanor*
Charles W. Hanor (TX Bar # 08928800)
HANOR LAW FIRM PC
750 Rittiman Road
San Antonio, Texas 78209
Tel.: (210) 829-2002
Fax: (210) 829-2001
chanor@hanor.com

/s/ *Thomas S. Keaty*
Thomas S. Keaty (TX Bar # 11144110)
KEATY LAW FIRM LLC
365 Canal Street, Suite 2410
New Orleans, Louisiana 70130
Tel.: (504) 524-2100
Fax: (504) 524-2105
tskeaty@keatypatentfirm.com

Attorneys for Plaintiff Wilco Marsh Buggies & Draglines, Inc.